Joshua Swigart (SBN 225557)
Josh@SwigartLawGroup.com
**SWIGART LAW GROUP, APC**
2221 Camino Del Rio S, Ste 308
San Diego, CA 92108
P: (866) 219-3343

Daniel Shay (SBN 250548)
Dan@ShayLegal.com
**SHAY LEGAL, APC**
2221 Camino del Rio S, Ste 308
San Diego, CA 92108
P: 619-222-7429

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN SMETHURST, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GLEIBERMAN PROPERTIES INC., MG SKYE APARTMENTS LLC, MG SKYE APARTMENTS HIL LLC, MG SKYE APARTMENTS CHF LLC, MG SKYE APARTMENTS BHN LLC, MG SKYE APARTMENTS VDF LLC, MG SKYE APARTMENTS MAD LLC, MG SKYE APARTMENTS SHA LLC, MG SKYE APARTMENTS HIL LLC, MG SKYE APARTMENTS MLR LLC,<br><br>Defendants. | Case No.: **'25 CV2950 BTM BJW**<br><br>CLASS ACTION<br><br>COMPLAINT FOR VIOLATIONS OF:<br><br>1. Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962 & 1964(c)<br>2. Unlawful Retention of Residential Security Deposits, Cal. Civ. Code § 1950.5<br>3. Consumer Legal Remedies Act, Cal. Civ. Code § 1750 et seq.<br>4. Unfair and Deceptive Business Practices, Cal. Bus. & Prof. Code § 17200 et seq.<br>5. Rosenthal Fair Debt Collection Practices Act Cal. Civ Code § 1788 et seq.<br>6. Statutory Larceny, Cal. Pen. Code §§ 484 & 496 |

Plaintiff RYAN SMETHURST ("Plaintiff") brings this class action on behalf of himself, and the Class, as defined below, against Defendant GLEIBERMAN PROPERTIES INC., a California Corporation, dba MG Properties Group (referred to herein as "MG") and the following owner defendants:

MG SKYE APARTMENTS LLC, a Delaware limited liability company;

MG SKYE APARTMENTS HIL LLC, a Delaware limited liability company;

MG SKYE APARTMENTS CHF LLC, a Delaware limited liability company;

MG SKYE APARTMENTS BHN LLC, a Delaware limited liability company;

MG SKYE APARTMENTS VDF LLC, a Delaware limited liability company;

MG SKYE APARTMENTS MAD LLC, a Delaware limited liability company;

MG SKYE APARTMENTS SHA LLC, a Delaware limited liability company;

MG SKYE APARTMENTS HIL LLC, a Delaware limited liability company;

MG SKYE APARTMENTS MLR LLC, a Delaware limited liability company (the owner Defendants are collectively referred to herein as "Owners" or "Owner" and MG along with Owners are collectively referred to herein as "Defendants").  Plaintiff makes these allegations based on personal knowledge and investigation conducted by his attorneys.

## **INTRODUCTION**

1.    Plaintiff brings this Class Action because of Defendants' intentional failure to follow landlord tenant laws, and Defendants' repeated scheme of larceny and defrauding tenants by demanding payment for bogus fees, charges, and expenses.

2.    Defendant MG manages many apartment complexes throughout California.  MG is no stranger to Class Action lawsuits regarding breaches of California laws that protect tenants.

3.    As recently as October 2024, MG settled a Class Action lawsuit for unlawful retention of residential security deposits, restitution as a remedy for "unfair competition" under California Business and Professions Code §§ 17200, *et seq*., and unlawful liquidated damages (late fees) *Yu; et al. v. Glieberman Properties Inc.; et al.*;

Case No.: 37-2021-00008418-CU-OR-CTL, (California State Court, County of San Diego) ("Previous Class Action").

4.     Defendants litigated that case for nearly three years, and despite agreeing to pay approximately ten million dollars ($10,000,000) to settle the claims of many impacted tenants, Defendant has continued with the same conduct that landed them in court initially.  Unfortunately for Defendants' thousands of current or former tenants, Defendants' have not learned to respect its tenants' rights.  Such previous penalty was clearly not enough to deter future illegal conduct, for the same actions.

5.     Disturbingly, the prior conduct alleged in the Previous Class Action was systemic unlawful taking of former tenants' security deposits.  Such treatment outlines MG's view of tenants as targets for exploitation, whereby MG can pass off costs associated with renovating a vacated unit.  By passing these costs on to the former tenant, MG can raise the profitability of each unit for its Owners by minimizing the costs of maintenance and repairs.  Such practice is employed across the units MG manages.

6.     What is more disturbing is that this conduct was intentionally continued, as part of an organized scheme or enterprise, to place profits over people—by whatever means available—through abusing the disparate power in negotiation Defendants have as part of a large, organized conglomerate with significantly more resources than its prospective, current, and former tenants.

7.     Defendants have continued, through present, such practices alleged therein.[1]

8.     Defendants have not only continued the practice of retaining the full amount of security deposits, but Defendants continue with the demands that tenants pay unsubstantiated costs, i.e. costs arbitrarily decided by MG and unsupported with receipts for work done, associated with renovations rather than repairs.  Such demands

---

[1] It should be noted that since the previous lawsuit was filed, there was a change to the California Civil Code § 1950.5 in that more protections were provided to tenants and the landlord had heightened obligations to document damage and confirm such damage with former tenants.  Generally, the law took effect on January 1, 2025, while some portions of the Code section did not take effect until April or July of 2025.

are accompanied by threats of reporting tenants to credit agencies or debt collectors to coerce these tenants to pay via Defendant's online portal. Not only are these actions taken in bad faith, but they are made with the intention to defraud unsuspecting tenants.

9.    While the recently settled Previous Class Action focused on security deposits, fraudulent debt reporting, and late fees, Defendants' disregard of landlord tenant laws goes further.

10.    Defendants improperly delegated their financial responsibilities to keep and maintain the apartments in a habitable condition to the tenants.  Such delegations include billing tenants for routine pest control fees incurred, where the maintenance and obligation to pay such associated fees are part of a landlord's obligations under the long-standing Implied Warranty of Habitability in California law.

11.    Defendants' conduct was not done in isolation, Defendants made a calculated business decision to continue to defraud their tenants, with the intention to organize their efforts in a pattern of systemic larceny and wire fraud (as alleged later herein).

12.    As a result of Defendants' conduct, Plaintiff and Class Members have been harmed and damaged in several ways.

13.    Plaintiff cannot in good conscience allow Defendants to continue to steal from, defraud, and threaten unsuspecting and vulnerable tenants with illegal bullying tactics Defendant knows it should not be using.

14.    Plaintiff, on behalf of himself and all others similarly situated, alleges claims for (1) Unlawful Retention of Residential Security Deposit (Cal. Civ. Code § 1950.5); (2) violations of the Consumer Legal Remedies Act (Cal. Civ. Code § 1750 *et seq.*); (3) violation of the California Unfair Competition Law (Cal. Business & Professions Code § 17200, *et seq.*); (4) violation of the Rosenthal Fair Debt Collection Practices Act (Cal. Civ. Code § 1788 *et seq.*); (5) statutory larceny (Cal. Pen. Code §§ 484 & 496); and, (6) violations of the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §§ 1961-1968) ("RICO").  Plaintiff and the Class Members seek

damages, including but not limited to nominal damages from Defendants, and to compel Defendants to adopt adequate legal practices regarding the handling of security deposits, demanding payment for unsubstantiated costs, and collecting illegal fees.

## JURISDICTION AND VENUE

15.    The Court has federal question jurisdiction under 28 U.S.C. § 1331, because Plaintiff's RICO claims arise out of violation of federal law 18 U.S.C. § 1961

16.    This Court has supplemental jurisdiction for Plaintiff's state law claims under 28 U.S.C. § 1367(a)

17.    Alternatively, jurisdiction is proper under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), because Plaintiff, a resident of the State of California, seeks relief on behalf of a California class, which will result in at least one class member belonging to a different state than at least one Defendant. All Owners are Delaware limited liability companies, thus satisfying minimal jurisdiction. There will be more than 100 members in the class, and the aggregated damages exceeds the $5,000,000 threshold for federal court jurisdiction under CAFA.

18.    Plaintiff is a citizen of California because his domicile is in Vista, California.

19.    This Court has personal jurisdiction over MG because it has conducted, and continues to conduct, substantial business in California and employs numerous individuals in California, and has intentionally availed itself of the laws and markets of California through the operation of their business in California.

20.    This Court has personal jurisdiction over Owners because they all conducted and continue to conduct substantial business in California, employ numerous individuals in California, and have intentionally availed themselves of the laws and markets of California through the operation of their business in California.

21.    Venue is proper because the illegal acts alleged herein occurred at Skye Apartments in Vista, California.  Owners own those apartments and MG manages them.  Plaintiff's tenancy occurred there and Plaintiff's causes of action arose there.

# PARTIES

## A. PLAINTIFF

22.    Plaintiff is an individual over the age of eighteen years, and at all times relevant herein was and is, a resident of the County of San Diego in the State of California.

23.    Plaintiff was a tenant at an apartment complex in San Diego commonly referred to as Skye Apartments, located at 501 W. Bobier Drive, Vista, California 92083 ("Skye Apartments").

## B. DEFENDANTS

24.    Defendant MG is a multi-dwelling residential apartment investor, owner, developer, and property management juggernaut headquartered in San Diego, California.  MG acts as an agent for the Owners at Skye Apartments as the property manager.  According to MG's website, MG has acquired 32 apartment communities totaling more than 2,500 units in San Diego County, expanding into the Inland Empire with the acquisition of 6 new properties comprising 1,764 units, in addition to acquiring units in Northern California.  Further, and unfortunately for tenants who have moved out, MG boasts that "[i]n most cases, acquisitions have required renovations and operational improvements to make them successful."[2]

25.    Tenants, like Plaintiff, who have moved out of units recently acquired by MG were stuck with the bill for such "required renovations."

26.    Owners are all Delaware limited liability companies and own Skye Apartments as tenants in common, and are considered landlords.

27.    The Owners, as landlords, have a non-delegable duty to provide a habitable premises to all their tenants.  The Owners are, if otherwise not directly liable, vicariously liable for MG's actions and omissions.

28.    Defendant MG, as a property manager, is also considered a landlord.

29.    Defendants are or were the landlords of Plaintiff and Class Members.

---

[2] https://mgproperties.com/about-us/ (last accessed October 27, 2025).

30.    Upon information and belief, Defendant MG is acting under the direction of, for the benefit of, and/or as part of a scheme or enterprise in common with Owners.

31.    While Owners are known members of the scheme or enterprise in common with MG, Defendant MG provides property management services to more individuals or entities (i.e., MG's property management portfolio), thus further perpetuating the scheme and expanding enterprise to presently unknown individuals or entities.  Each additional person or entity that MG provides services for are, upon information and belief, intimately involved and directly or vicariously responsible for Class Members' injuries.

32.    Unfortunately for tenants of MG's portfolio, MG uniformly, systematically, and in bad faith retains residential security deposits in violation of California law and additionally charges its tenants unlawful, hidden, and excessive fees

33.    MG has centralized security deposit administration, rent and fee policy for all the California properties under its portfolio by developing, promulgating, and administering security deposit and fee policies and practices uniformly across their California controlled and/or managed properties.

34.    Every putative class member resided in California at the time their cause of action accrued, all injuries complained of herein occurred within California. MG is headquartered in California, owns property in California and primarily, if not exclusively, does business within California

## FACTUAL ALLEGATIONS

**A. Background**

35.    On or around August 14, 2022, Plaintiff began residing at Skye Apartments.  When Plaintiff became a tenant by moving into the unit, the carpet and paint were already in used condition.

36.    On or around November 26, 2024, Owners acquired Skye Apartments, where MG became the property manager.  At this point, the landlord-tenant relationship between Plaintiff and Defendants was formed.

37.    Defendants assumed the role of the landlord for all leases for the residents of Skye Apartments, as such leases existed prior to Defendants acquiring ownership and/or management of Skye Apartments.

38.    Plaintiff's lease included a delegation of the monthly pest control fees, a formula for determining mandatory administrative fees, and a flat-rate trash fee. None of such fees were included in the monthly rent and there was no total for monthly fees in the lease.  The total price for rent and all such fees was never listed, explained, articulated or displayed.

39.    Plaintiff paid such fees as they became "due," thinking that he was complying with his contractual obligations.

40.    Had Plaintiff known the fees he was being charged were unlawful, he would not have paid them.

41.    On or around December 7, 2024, Plaintiff, in compliance with his lease, notified MG that he did not plan on renewing his lease for another term.

42.    MG offered to do an initial inspection with Plaintiff, which was scheduled to be done on January 2, 2025.  The inspection itself was a cursory evaluation of the condition of the premises, which amounted to no more than a casual walk-through. After completing the initial inspection, neither MG nor its agents provided Plaintiff with a copy of the initial inspection findings as required by California Civil Code § 1950.5(f)(2).  Instead, at the conclusion of the inspection, MG's agents informed Plaintiff that the premises looked nice, and MG would only need to do a standard cleaning.

43.    On or around January 13, 2025, Plaintiff moved out of the premises, thinking that all parties were happy and expecting at least a partial refund of his security deposit.

44.    On or around February 1, 2025, MG posted a bill on Plaintiff's online tenant payment portal.  The bill was for $2,410.36.  The only support for this charge was a "Move Out Statement," which informed Plaintiff that his $500 security deposit

had been credited toward $2,919.56 in work. Such work was alleged to be $175 for a "standard clean," $460.00 for a "ASM Full paint + material of paint needed," and $2,284.65 for a "carpet replacement for heavy stains/unable to clean" was needed. No documents showing charges incurred and deducted were provided.

45.    MG did, however, later provide pictures of forensic-level investigation done to the carpet and unit in an attempt to establish every possible fault with the condition of the unit. Such investigation was not done during the initial inspection, which was a deceivingly simple review.

46.    Defendants cannot, as a matter of fact, show such alleged damage was caused by Plaintiff, as Plaintiff moved into a unit that had used carpet and paint,[3] and, upon information and belief, such forensic-level investigation was not done prior to Plaintiff's move-in.

47.    On or around February 20, 2025, Defendant MG emailed Plaintiff, informing him that if the bill was not paid in full or payment arrangements not made, then MG would send the matter to a third-party collection agency and Plaintiff's credit could be impacted.

48.    Plaintiff protested and on or around March 20, 2025, Defendant MG informed Plaintiff that the charges were modified or reduced and the balance due became $1,470.92.

49.    Plaintiff paid the demanded sum by electronic payment because he feared suffering an adverse impact to his credit or creditworthiness.

**B. Former Lawsuit**

50.    While MG settled the lawsuit and admitted no liability in the Previous Class Action, the facts of that lawsuit can be used to show MG's knowledge, intentions, and common, continuing practices, policies, or procedures.

///

---

[3] In Plaintiff's move-in inspection report, there were noted marks on the walls, floors, and doors, and a roach was found on the floor. Such conditions show that the unit was dirty and delivered in a used condition.

51.    While any property manager should be readily familiar with how a security deposit is supposed to be handled, the prior lawsuit shows that MG definitively had intimate knowledge of the legal requirements under California Civil Code § 1950.5 regarding how a security deposit should be treated in good faith.

52.    The Previous Class Action similarly sought to show that late fees were inappropriate liquidated damages.  While such late fees are not presently being sought in the instant action, MG would have intimate knowledge of what fees are lawful and unlawful, and the conditions by which such fees can be passed onto tenants.

53.    Clearly, MG has decided to pursue the misconduct of charging tenants exorbitant, excessive, unlawful, unsubstantiated, and unsupported costs and fees, regardless of the consequences.  Such a policy, practice, or procedure gives rise to bad faith dealings and operations that target unsuspecting tenants, leveraging such tenants diminished bargaining power.

54.    MG's misconduct as alleged above is unreasonable, outrageous, obscene, and intolerable by a just society.  MG's misconduct is oppressive to current and former tenants because it subjects such tenants to cruel and unjust hardship in conscious disregard of their rights as a tenant.

**C. Security Deposits**

55.    California Civil Code § 1950.5 is very clear with the obligations a landlord has in handling a tenant's security deposit.

56.    The Civil Code provides that a security deposit can only be used for: (i) compensation to the landlord for a tenants default in rent; (ii) repairing damage to the premises that was caused by the tenant and is exclusive of ordinary wear and tear; (iii) cleaning the unit to return it to the level of cleanliness at the start of the tenancy; and, (iv) the cost of repairing the landlord's personal property, but only if the rental agreement authorizes use for such.[4]

///

---

[4] California Civil Code § 1950.5(b)(1-4)

57.     The Civil Code prohibits, in part, the landlord from:

> assert[ing] a claim against the tenant or the security for damages to the premises or any defective conditions that preexisted the tenancy, for ordinary wear and tear or the effects thereof, whether the wear and tear preexisted the tenancy or occurred during the tenancy, or for the cumulative effects of ordinary wear and tear occurring during any one or more tenancies.[5]

58.     The Civil Code further prescribes when a tenancy is ending unrelated to a lawful eviction, the landlord shall notify the tenant in writing of the right to request an initial inspection of the premises.[6] The purpose of such inspection is to give the tenant an opportunity to fix identified issues—consistent with the rights and obligations of the parties under the rental agreement—so that the tenant can avoid deductions from the security.[7]

59.     After such initial inspection, the landlord is required to give the tenant an itemized statement (in person or left in the premises) that specifies the repairs or cleanings allowed under the law, including the text of the law.[8]

60.     The tenant shall then have the opportunity to fix such issues reported, so long as it is their obligation to do so, to avoid deductions to their security deposit.[9]

61.     The landlord is prohibited from making deductions to the security deposit for repairs or cleaning that was not identified in the initial inspection, unless the identified repairs or cleaning was not done by the tenant, the repairs or cleaning was done for damages that occurred between the inspection and the move-out, or the tenants possessions prevented the landlord from finding the need for cleaning or repair.[10]

62.     After the tenant moves out, the landlord has twenty-one (21) days to personally deliver or send by first-class mail, postage prepaid, (i) a copy of an itemized

---

[5] California Civil Code § 1950.5(e)(2)(A)
[6] California Civil Code § 1950.5(f)(1)
[7] *Id.*
[8] California Civil Code § 1950.5(f)(2)
[9] California Civil Code § 1950.5(f)(3)
[10] California Civil Code § 1950.5(f)(4-6)

statement of deductions to the security deposit with the lawful bases for such deductions, and (ii) any remaining portion of the security to the tenant.[11]  Importantly, the landlord is required to include copies of documents (like receipts) showing charges incurred and deducted by the landlord to repair or clean the premises with the itemized statement.[12]

63.    If the landlord fails to comply with the law in bad faith, the landlord is not entitled to collect any of the security deposit.[13]

64.    While MG did conduct an initial, cursory inspection, MG did not personally deliver a copy of the pre-move out inspection report to Plaintiff or leave it in Plaintiff's residence.  Such a misleading "inspection" was done pursuant to MG's standard policies, practices, or procedures.  MG has a policy, practice, or procedure of lulling tenants into a false sense of security by making verbal representations and later recording more serious deficiencies or investigating more thoroughly, using different investigative tactics when the tenant is not present.  In this vein, MG does not seek to allow former tenants like Plaintiff and Class Members an opportunity to maximize the return of their security deposits, but MG rather seeks to steal from and fraudulently pass on bogus charges to the former tenants and hide amounts actually paid, if any.  MG's representations are false and fraudulent misrepresentations of not only the condition of the unit, but the tenants' legal obligations to pay MG for such renovations.

65.    Further, because MG did not identify the proposed work to be done in the initial inspection, MG is prevented from collecting such unidentified costs under California Civil Code § 1950.5(f)(4).

66.    MG has not provided documentation (i.e., receipts for work alleged to have been done to Plaintiff's unit) that complies with California Civil Code § 1950.5(h)(2) to Plaintiff in any form.

---

[11] California Civil Code § 1950.5(h)(1)
[12] *See* California Civil Code § 1950.5(h)(2)
[13] California Civil Code § 1950.5(h)(7)

CLASS ACTION COMPLAINT

**D. Habitability**

67.    A landlord is required to keep and maintain a property in a habitable condition under California law. [14]   This is known as the Implied Warranty of Habitability.

68.    The Implied Warranty of Habitability imposes obligations upon the landlord, which includes keeping the premises free of pests like insects and vermin.[15]

69.    MG charges a recurring, monthly "pest control" fee to its tenants.  Such fee is calculated, according to the lease, as dividing the total cost of monthly pest control for the building or complex by the number of units in the building or complex.

70.    Such charges are passed on to tenants via MG's online tenant portal, where monthly charges are posted and tenants are encouraged to pay their rent and other bills.

71.    While such fees may be considered nominal to each individual unit, such fees add up across MG's entire California property management portfolio.   MG effectively passes-on thousands of dollars to its tenants, like Plaintiff, each month by unlawfully delegating its legal obligations to its tenants.

**E. Additional Fees Are Hidden from Advertised Prices**

72.    Deciding where to live is one of the most important consumer decisions a tenant must make.  Indeed, there is significant overlap between landlord-tenant laws and consumer protections.[16]  As such, the laws relating to advertising apartment units to prospective tenants afford such consumers protections from deceptive marketing practices, such as tacking on mandatory fees after the initial price is advertised (commonly referred to as "drip" pricing).[17]

///

---

[14] California Civil Code § 1941 *et seq*.

[15] *See* California Civil Code § 1941.1(a); Health and Safety Code § 17920.3(a)(12).

[16] *See, e.g.,* California Department of Justice, Office of the Attorney General, *CONSUMER ALERT Know Your Rights: A Guide for Tenants* (rev. 2022), https://oag.ca.gov/system/files/media/Know-Your-Rights-Tenants-English.pdf (last visited Oct. 22, 2025)

[17] *See, e.g.,* California Department of Justice, Office of the Attorney General, *SB478 – Hidden* Fees (2024) https://oag.ca.gov/hiddenfees (last visited Oct. 22, 2025).

73.    An advertised price must include all mandatory fees that the consumer is expected to pay.[18]

74.    MG advertises prices for available units in its California portfolio, but additional fees are added once a tenant goes to sign a lease.  Such additional fees include but are not limited to pest control, administrative fees, and  fees for utilities.

75.    <u>Pest Control Fees.</u>  Tenants are required to pay a monthly pest control fee for pest control services for the entire building or complex.  Such fees do not have a fixed price but are variable.  Such fees are unsupported by documentation of costs expended to administer such services.

76.    <u>Administrative Fees.</u>  Tenants are required to pay monthly administrative fees for some utility services, like water.  The fees do not have a fixed price and are variable.  Such fees are unsupported by documentation of costs expended to administer such services.

77.    <u>Flat-Rate Fees.</u>  Tenants are required to pay monthly flat-rate fees for other utility services, like trash removal.  Such fees have a fixed price in the lease.  The fees are unsupported by documentation of costs expended to administer such services.

78.    While the fees may be considered nominal to each individual unit, such fees add up across MG's entire California property management portfolio. MG passes-on thousands of dollars to its tenants each month without disclosing such fees in its advertising.

79.    Passing these fees onto tenants is an unlawful or fraudulent business practice because landlord has a duty to maintain habitability standards.  The fees are not mentioned in advertising thereby deceiving tenants into believing that the price for a unit is lower than what MG ultimately charges them.

///

///

///

---

[18] *See*  California Civil Code § 1770(a)(9, 20 29); *see also* California Business and Professions Code § 17200 *et seq.*

F.  **Defendant's Acts of Theft and Fraud**

80.     Unfortunately for MG's tenants, MG's policies and procedures amount to illegal activity, resulting in the repeated theft and acts of wire fraud.

81.     <u>Larceny.</u>  To commit statutory larceny in California, one must: (i) take the personal property, (ii) of another, (iii) without consent, and (iv) with the intent to permanently deprive the owner of that property.[19]  Liability is imposed upon all the actors who commit those acts outlined above, and those who knowingly aids and abets such actors, or those who knowingly receive such stolen property.[20]  Defendant MG has developed common policies, practices, procedures or schemes designed to steal money from current and former tenants, without consent, to benefit itself and the Owner Defendants, with the intention of permanently depriving the money from the current and former tenants.

82.     Such money is stolen pursuant to false and fraudulent misrepresentations as outlined above, which are made knowingly and by design, pursuant to common policies, practices, procedures or schemes.    MG uses such fraudulent misrepresentations to retain the security deposit entrusted to it and intentionally pass on unlawful fees to tenants.  Defendants, all being some form of legal entity owned by the same individuals, are not ignorant of the conduct of the other entities.  Each named Defendant shares officers, employees, shareholders, or agents between each other Defendant, including management or executive level decision makers, and thus each named Defendant knows that money is being stolen from the tenants, or is otherwise knowingly aiding and abetting the theft of such property.

83.     <u>Federal Wire Fraud.</u>  To commit wire fraud, one must (i) have a scheme to defraud someone out of money or property, (ii) by making a material misrepresentation or omission, (iii) with the intent to defraud, and (iv) effectuate such scheme by wire transmission.[21]  Defendants MG and Owners are operating pursuant to

---

[19] Cal. Penal Code § 484
[20] Cal. Penal Code § 496
[21] 18 U.S.C. § 1343

CLASS ACTION COMPLAINT

a scheme to defraud former tenants out of money or property in that they charge former tenants exorbitant and unsubstantiated cleaning and repair fees after the tenant has moved out, without a lawful basis to do so and as a pretext for offsetting or completely passing on Defendants' renovation costs, by making representations to the former tenants that such charges are lawful and pursuant to California law.

84.     Defendant MG, on behalf of itself and Defendant Owners, asserts such a purported lawful basis by threatening to send unpaid sums to third party debt collectors and report to credit reporting agencies unless payment in full is made or a payment plan is worked out.  Such representations to current and former tenants regarding unlawful fees and move out costs are material, false, and done with the intention to defraud.

85.     Each Defendant committed, attempted to commit, or conspired to commit an offense under 18 U.S.C. § 1349 and are thus equally liable.

86.     Defendant MG sent electronic messages (emails, which are wire transmissions) to Plaintiff on February 20, 2025 and March 20, 2025.  Each message (i) was sent as part of a scheme to defraud someone out of money or property, (ii) made at least one material misrepresentation or omission, (iii) was sent with the intent to defraud, and (iv) sent by wire transmission.

87.     Every time a tenant moved out of a unit, Defendant MG would illegally charge that tenant fees or costs in violation of California law.  Each such act, coupled with the threatening emails, constitutes wire fraud in violation of the 18 U.S.C. § 1343 because Defendants were acting to further the scheme they had devised to defraud former tenants out of money or property, as alleged above.

88.     Further specific instances of wire fraud include the allegations contained in the Previous Class Action complaint when MG sent an email to the class representative on January 10, 2019, demanding payment for renovation costs..  MG also sent electronic communications to Plaintiff via its online portal demanding illegal fees.

///

89.    All such acts outlined in the preceding seven (7) paragraphs were related and continuous.

**G. Plaintiff Suffered Damages**

90.    Defendants' policies, practices, procedures, and schemes have caused Plaintiff and Class Members to suffer damages.  Plaintiff has suffered monetary damages in the form of losing his entire security deposit, paying additional charges to renovate the vacated unit, and being charged hidden fees.

**H. Defendant MG Has Acquired More Properties for Its Management Portfolio That Were Not Included in the Previous Class Action Settlement**

91.    Since settling the Previous Class Action complaint, Defendant MG has acquired additional properties for its management portfolio.  For example, Skye Apartments where Plaintiff lived was acquired after the period to make a Class claim was closed.  Upon information and belief, Defendant MG has collected and added other properties to the portfolio.

92.    MG also manages other properties not listed in the Previous Class Action complaint, such as Domain San Diego, which is an apartment complex located at 8798 Spectrum Center Blvd, San Diego, California 92123.  It is unknown to Plaintiff whether such tenants received relief from the Previous Class Action.

## <u>CLASS ACTION ALLEGATIONS</u>

93.    Plaintiff brings this class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of the following Class:

> All individuals who, based on Defendants' records, (i) were tenants of a property managed by Defendant MG and (ii) made at least one payment of a contractual fee other than rent, or (iii) were charged in an amount that exceeded the security deposit upon move-out (the "RICO Class").

///

///

///

94.    Plaintiff also seeks to certify the following two subclasses:

All former residents, excluding those with claims already paid, of MG's California Properties whose leaseholds terminated at any time from four years prior to the date of the filing of the Complaint to the date of class certification, and who had at least $125 of their security deposit retained for cleaning and/or repairs combined. (the "Security Deposit Subclass").

All former residents of MG's California Properties who were charged pest control fees, administrative fees, and/or hidden flat-rate fees at any time from four years prior to the date of the filing of the Complaint to the date of class certification (the "Fees Subclass").

95.    Excluded from the Class are Defendants, their officers and directors, families and legal representatives, heirs, successors, or assigns and any entity in which either Defendant has a controlling interest, and any Judge assigned to this case and their immediate families.

96.    Excluded from the Security Deposit subclass are the former tenants who have had security deposit claims paid by the Previous Class Action.

97.    Excluded from the Fees subclass are the current and former tenants who have had claims for late fees paid by the Previous Class Action.

98.    Plaintiff reserves the right to amend or modify the definition of the Class and/or Subclass to provide greater specificity and/or further division into subclasses or limitation to particular issues.

99.    **Numerosity:** The members of the Class are so numerous that joinder of all members is impracticable. The exact number or identification of class members is presently unknown, but it is believed that there are hundreds if not thousands of class members in the Class. The identities of the Class Members are ascertainable and can be determined based on records maintained by Defendant.

///

100. **Predominance of Common Questions:** There are multiple questions of law and fact common to the Class that will predominate over questions affecting only individual class members. The questions of fact and law that are common to the Class Members and predominate over questions that may affect individual Class Members, include:

a) Whether Plaintiff's and the Class Members' were charged pest control fees alleged above;

b) Whether such pest control fees were lawfully passed on to Plaintiff and Class Members;

c) Whether Plaintiff and the Class Members were charged mandatory administrative fees alleged above;

d) Whether such mandatory administrative fees were lawfully passed on to Plaintiff and Class Members

e) Whether Plaintiff and the Class Members were charged flat-rate fees alleged above;

f) Whether such flat-rate fees were lawfully passed on to Plaintiff and Class Members;

g) Whether Defendants had a policy, practice, or procedure to charge Plaintiff and the Class Members illegal fees;

h) Whether Defendants repeatedly violated California Civil Code § 1950.5 in bad faith;

i) Whether Defendants had a policy, practice, or procedure to charge Plaintiff and the Class Members to retain the entirety of Plaintiff's and Class Members' security deposits;

j) Whether Defendants had a policy, practice, or procedure to charge Plaintiff and the Class Members sums in excess of the charges allowable under California Civil Code § 1950.5;

///

k)  Whether Defendants had a policy, practice, or procedure to collect "debts" when they did not have a legal basis for doing so;

l)  Whether such charges would be considered "debts;"

m) Whether Defendants did not credit Plaintiff or Class Members for ordinary wear and tear;

n)  Whether Defendants engaged in unfair or deceptive business practices;

o)  Whether Defendants engaged in larceny;

p)  Whether Defendants engaged in wire fraud;

q)  Whether Defendants engaged in a pattern of racketeering activity;

r)  Whether Defendants were engaged in an enterprise;

s)  Whether Defendants have committed at least two predicate acts of racketeering activity in the last ten (10) years;

t)  Whether Defendants caused Plaintiff and Class Members damages;

u)  Whether Plaintiff and Class Members are entitled to actual damages, nominal and/or statutory damages, other monetary relief, and/or equitable relief;

v)  Whether Defendants violated the California Unfair Competition Law (Business & Professions Code § 17200, et seq.); and

101.  **Typicality:** Plaintiff's claims are typical of those of other Class Members because all had their security deposits retained, additional renovation costs were passed on to them and they were charged illegal fees under the lease, due to Defendant's virtually identical conduct.

102.  **Adequacy:** Plaintiff is an adequate representative of the Class because he Class member and his interests do not conflict with the interests of other class members. Plaintiff is represented by experienced and competent attorneys ("Class Counsel") who have litigated numerous class actions. Class Counsel intends to prosecute this action vigorously for the benefit of everyone in the Class. Plaintiff and Class Counsel can fairly and adequately protect the interests of all members of the Class.

103.   **Superiority**: A class action is superior to other available methods for fairly and efficiently adjudicating this controversy because individual litigation of Class Members' claims would be impracticable and individual litigation would be unduly burdensome to the courts. Without the class action vehicle, the Class would have no reasonable remedy and would continue to suffer losses. Further, individual litigation has the potential to result in inconsistent or contradictory judgments. There is no foreseeable difficulty in managing this action as a class action and it provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**First Cause of Action**

**Unlawful Retention of Residential Security Deposits**

**California Civil Code § 1950.5**

104.   Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding and subsequent paragraphs as though fully set forth herein.

105.   Defendants did not have a policy, practice, or procedure that complied with the initial inspection practices under California Civil Code § 1950.5(f)(1).

106.   Defendants charged Plaintiff and Class Members unsubstantiated cleaning, repair, and painting fees and deducted those charges from the security deposit.

107.   Defendants had a policy, practice, or procedure to charge former tenants costs associated with returning a unit to a condition that was better than as delivered to the tenants in violation of California Civil Code § 1950.5(e)(2).  This policy, practice, or procedure did not exclude ordinary wear and tear from the charges, or otherwise credit tenants for ordinary wear and tear, in violation of California Civil Code § 1950.5(b)(2).

///

///

108.   Defendants did not have a policy, practice, or procedure to provide the itemized statement indicating the basis for, and the amount of, any security received and the disposition of the security within 21 days of Plaintiff or Class Members' move-out by first class mail or in person delivery as required by California Civil Code § 1950.5(h)(1).

109.   Defendants did not provide copies of documents showing charges incurred and deducted by Defendants to repair or clean the premises, along with the itemized statement, as required by California Civil Code § 1950.5(h)(2).

110.   Defendants, as a result of these charges, practices, policies, or procedures, unlawfully retained some or all of Plaintiff's and Class Members' security deposits.

111.   Defendants' misconduct described above was done in bad faith.

112.   As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members suffered damages.

113.   Plaintiff and Class Members are entitled to actual damages and statutory damages of twice the amount of their security deposits.

<u>**Second Cause of Action**</u>

**Consumer Legal Remedies Act**

**California Civil Code § 1750 et seq.**

114.   Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding and subsequent paragraphs as though fully set forth herein.

115.   Plaintiff sent Defendant MG a Consumer Legal Remedies Act ("CLRA") demand letter, which was sent by certified mail with return receipt requested as required by Cal. Civ. Code § 1750 *et seq.*, which outlined Defendant's conduct in violation of the CLRA and demanded relief within thirty (30) days of receipt.  Tracking confirms that the letter was delivered to MG's principal address on October 29, 2025.

116.   Allegations in Plaintiff's CLRA letter were for violations of Cal. Civ. Code §§ 1770(a)(9, 14, 15, 16, 19, 20, and 29).

117.    Defendant MG, as alleged throughout this complaint, falsely advertised the condition and costs associated with available rental units.

118.    Defendant MG represented that the transactions with Plaintiff and Class Members conferred or involved rights that were not conferred or involved.

119.    Defendant MG represented that a part, replacement, or repair service was needed or done upon termination of the tenancies to the units when such a part, replacement, or repair service was not needed and / or not Plaintiff's or Class Members' responsibility to correct.

120.    Defendant MG represented that its illegal conduct was lawful when it was not.

121.    Defendant MG shifted illegal costs and fees to Plaintiff and Class Members through the insertion of an unconscionable provision in the lease agreement (a contract).

122.    Defendant MG advertised that the units were offered at a specific price but later added on additional costs and fees, increasing the actual price of the units.

123.    Plaintiff demanded relief for the proposed Classes, as permitted by Cal. Civ. Code § 1781(a).

124.    Before the expiration date of the demand letter, Plaintiff is entitled to bring an action for injunctive relief, under Cal. Civ. Code § 1782(d).

<u>**Third Cause of Action**</u>

**Unfair and Deceptive Business Practices**

**California Business and Professions Code § 17200 et seq.**

125.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding and subsequent paragraphs as though fully set forth herein.

126.    Pursuant to §17200 of the California Business and Professions Code, "any unlawful, unfair or fraudulent business act or practice" constitutes "unfair competition."

127.   The violations of the California Civil Code and other wrongdoing alleged herein constitute unlawful, unfair and/or fraudulent business acts and practices, and therefore "unfair competition," for the purposes of § 17200 of the California Business and Professions Code. Among other violations, Defendants' collections and attempted collections of pest control fees, unsubstantiated mandatory fees, hidden flat-rate fees, and amounts over and above a retained security deposit are unlawful, all entitling Plaintiff to restitution under the UCL.

128.   Plaintiff has suffered financial injury in fact and has lost money and/or property as a result of such unfair competition.

129.   The facts set forth establish that Plaintiff and Class Members are entitled to judgment over and against Defendants, jointly and severally, awarding restitution to the Plaintiff and Class Members of all monies acquired by means of the described unfair competition, including wrongfully charged fees and wrongfully withheld security deposits.

130.   Plaintiff and Class Members are further entitled to declaratory and injunctive relief determining the rights and obligations in dispute among the Parties and an order mandating MG adhere to the mandates of law with respect to their security deposit accounting practices.

### Fourth Cause of Action

### Rosenthal Fair Debt Collection Practices Act

### California Civil Code § 1788 et seq.

131.   Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding and subsequent paragraphs as though fully set forth herein.

132.   In enacting the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788-1788.33 ("RFDCPA"), the California Legislature found that "[u]nfair or deceptive collection practices undermine the public confidence which is essential to the continued functioning of the banking and credit system and sound extensions of

CLASS ACTION COMPLAINT

credit to consumers [that] [t]here is a need to ensure that debt collectors and debtors exercise their responsibilities to one another with fairness, honesty and due regard for the rights of the other" and that it was necessary to ". . . prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts." Cal. Civ. Code § 1788.1.

133.    Defendant MG is a debt collector within the meaning of Cal. Civ. Code § 1788.2(c) because in the ordinary course of business it regularly collected on consumer "debts," including but not limited to rent payments, fees, and move out costs.

134.    The RFDCPA prohibits unfair and deceptive conduct. *Cavalry SPV I, LLC v. Watkins*, 36 Cal. App. 5th 1070, 1084 (2019). Defendants violated the RFDCPA by (1) initiating contact with Class Members to collect on fees and charges Defendants knew or should have known had likely been procured through fraud, and that, even if valid, and would be subject to a vast array of potential defenses; and, (2) by accepting and retaining payments made on these invalid fees and charges.

135.    The foregoing acts and omissions constitute multiple violations of the RFDCPA against Defendant MG and was knowing and willful.

136.    One of such violations is that Defendant MG, as part of its property management services and pursuant to an internal policy, practice, procedure, or scheme, on behalf of Defendant Owners, attempted to collect alleged debts without legal basis to do so.  Attempting to collect invalid debts in this manner is an unfair or deceptive act or practice.

137.    As a result of each and every violation of the RFDCPA, Plaintiff and each Class Member is entitled to actual damages pursuant to Cal. Civ. Code § 1788.30(a); statutory damages for knowing or willful violations in the amount up to $1,000 pursuant to Cal. Civ. Code § 1788.30(b); and reasonable attorney fees and costs pursuant to Cal. Civ. Code § 1788.30(c).

///

///

CLASS ACTION COMPLAINT

## **Fifth Cause of Action**

### **Statutory Larceny**

### **California Penal Code §§ 484 & 496**

138.   Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding and subsequent paragraphs as though fully set forth herein.

139.   Cal. Pen. Code § 496 imposes liability upon:

> [e]very person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained[.]

140.   Cal. Pen. Code § 484, which defines "theft", states in pertinent part:

> Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, or who causes or procures others to report falsely of his or her wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money, or property or obtains the labor or service of another, is guilty of theft.

141.   Under California law, Plaintiff's and Class Members' security deposit constitutes property that can be the subject of theft.

142.   Defendants acted in a manner constituting theft by fraudulently appropriating property which has been entrusted to them, with the specific intent to deprive Plaintiff and Class Members of their property.

143.    Under California law, the amounts Plaintiff and Class Members paid in excess of their security deposits constitutes property that can be the subject of theft.

144.    Defendants acted in a manner constituting theft by defrauding Plaintiff and Class Members of money by making a false or fraudulent representation or pretense, with the specific intent to deprive Plaintiff and Class Members of their property.

145.    Plaintiff and Class Members did not consent to any of Defendants' actions to take Plaintiff and Class Members money or property.

146.    Pursuant to Cal. Pen. Code § 496(c), Plaintiff and Class Members are entitled to treble damages, as well as attorneys' fees and costs as a result of Defendants' violations of Cal. Pen. Code § 496(a).

## **Sixth Cause of Action**

### **Racketeer Influenced and Corrupt Organizations Act**

### **18 United States Code § 1692 & 1964(c)**

147.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding and subsequent paragraphs as though fully set forth herein.

148.    Under 18 U.S.C. § 1964(c), individuals have the right to sue for damages if their property is harmed by violation of 18 U.S.C. § 1962 of the RICO.

149.    That section of the RICO, 18 U.S. Code § 1962, states;

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce…18 U.S. Code § 1962(a)

150.    Defendants formed an association-in-fact or pursuant to contract by virtue of a property management agreement, having as its ostensible purpose the creation of a landlord enterprise that would shift landlord obligations onto tenants to maximize profits.

151.    Such mechanisms employed to maximize profits included devising a scheme of racketeering activity, namely wire fraud.  Defendants did so to further the following fraudulent purposes:

    a. To conceal from its tenants its obligations as a landlord to provide habitable premises;

    b. To saddle tenants with charges being added to their obligations to pay rent in one of the most expensive places to reside, while concealing that it is not the tenants' obligation to pay such fees;

    c. To conceal from its former tenants the tenants' legal obligations with regard to restoration of vacated units;

    d. To conceal costs charged to former tenants and pass inflated costs on to such tenants; and, most importantly;

    e. To saddle such former tenants with onerous charges being added to their move-out obligations while concealing from them as much as possible about the extent of damages, their legal rights, and, in many cases, even the very existence of supporting documentation.

152.    Such association or contractual relationship was an "enterprise" within the meaning of 18 U.S.C. § 1961(4).

153.    The pattern of racketeering activity engaged in by Defendants has persisted from at least 2017 to present, when the Previous Class Action complaint brought claims for unlawful retention of security deposit charges and illegal late fees.

154.    Defendant MG, in its role as property manager, collected all payments made from defrauded tenants and was in charge of all communications with the tenants. In these communications, MG furthered the fraud by engaging in a systemic practice

of concealing from the tenants the fact that their move-out charges and monthly fees were illegal and in violation of California law and such tenants had the right to not pay the charges and fees.

155.   Defendants made the decision to make the purchase of Skye Apartments and further any illegal acts the previous landlords, owner and property managers committed, in addition to adding their own abusive practices.

156.   Defendants kept the costs and fees that were collected over the course of years, and earned millions of dollars in illegal fees and unlawful charges passed on to tenants, even after being sued for such practices previously.

157.   In its operation of the collection of the fees and costs from current and former tenants, Defendants relied on the interstate wire system, sending and receiving thousands of emails and ACH transmissions.

158.   Even after being sued previously, Defendants continued the substantially same fraudulent practices.

159.   Using the interstate wire system, Defendants sent presumably thousands of demands for payment from current and former tenants, demanding payment of the full balances or payment plans designed to motivate payments from confused or worried tenants.

160.   The Owners directed the activities of MG and exercised control over MG's collection practices.

161.   The enterprise continued extracting money from Plaintiff and Class Members on a monthly basis and at the termination of tenancy.

162.   Every payment made online through Defendants' online rent payment portal by Plaintiff and Class Members constitutes a discrete transaction in which Defendants perpetuated their scheme of defrauding current tenants out of money or property by making material misrepresentations or omissions through wire transmission.  Every demand MG made to be compensated for renovations to vacated units constitute an individual act of wire fraud in violation of the United States Code.

Every payment, which was made on a monthly basis, by Plaintiff and Class Members, for illegal fees (including the shifting of fees for the Implied Warranty of Habitability), is itself and individual act of wire fraud in violation of the United States Code.

163.   Pursuant to 18 U.S.C. § 1964(c), Plaintiff and the Class have suffered injury to their property by Defendants' violations of 18 U.S.C. § 1962 because Plaintiff and Class Members are victims of Defendants' schemes.  Plaintiff and Class Members are entitled to threefold the damages they sustained and the costs of the suit, including reasonable attorneys' fees, pursuant to 18 U.S.C. § 1964(c).

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment as follows:

1. That the Court certify this the Class and two Subclasses, pursuant to Fed. R. Civ. P. 23(b)(2) and Fed. R. Civ. P. 23 (b)(3), and appoint Plaintiff as representative of the Class and his attorneys as Class Counsel;

2. Actual Damages for all Class Members, trebled under 18 U.S.C. § 1964(c), and reasonable attorney's fees and costs;

3. Actual Damages and statutory damages pursuant to Cal. Civ. Code § 1950.5(m)

4. Actual damages, statutory damages, and reasonable attorney's fees and costs, pursuant to Cal. Civ. Code § 1788.30;

5. Treble damages, as well as attorneys' fees and costs, pursuant to Cal. Pen. Code § 496(c);

6. Restitution for all California residents who are members of the RICO Class, Security Deposit Subclass, and Fees Subclass under the UCL, in the event that damages are not provided to the Class under 18 U.S.C. § 1964(c);

7. Granting relief requested by Plaintiff, including injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and members of the Security Deposit and Fees Subclasses under the CLRA;

8.  Granting relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of members of the Security Deposit and Fees Subclasses under Cal. Civ. Code § 1788.30;

9.  An award of compensatory, statutory, and nominal damages in an amount to be determined;

10. An award for equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendants' wrongful conduct;

11. Such other relief as the court deems fair and reasonable.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a trial by jury for all claims so triable.

DATED: October 31, 2025                **SWIGART LAW GROUP, APC**

                                        By: <u>s/ Joshua B. Swigart</u>
                                        Joshua B. Swigart, Esq.
                                        Josh@SwigartLawGroup.com
                                        Attorneys for Plaintiff

DATED: October 31, 2025                **SHAY LEGAL, APC**

                                        By: <u>s/ Daniel G. Shay</u>
                                        Daniel G. Shay, Esq.
                                        Dan@ShayLegal.com
                                        Attorneys for Plaintiff

CLASS ACTION COMPLAINT